Moller CQ Township Board of Governors Good morning, Your Honors. If it may please the Court, this appeal involves a somewhat arcane and not-often-used procedural mechanism, default judgments. The District Court's decision below should be reversed on four distinct legal bases, any one of which is fatal to the default judgment, three of which render the default judgment void ab initio. I'd like to first begin, Your Honors, with an issue that to me jumps out as I reviewed. I was not trial counsel. I did not write the briefs. I was retained to argue the case orally. But as I prepared for this oral argument and reviewed the record, something struck me and stood out to me, the four bases that I think require reversal. First, the Rule 41A1 dismissal that happens before the cross-claim is filed. Second, the lack of a hearing under Rule 55B. Three, the lack of notice of that hearing under Rule 55B after an appearance. And four, the analysis of the Rule 55C motion, good cause to set aside the default judgment. I want to return to the first point, which was the notice of dismissal which was filed on January 25, 2016. Record document 48. It does not exist in the record because it was subsequently struck from the record on motion by Samrat, the appellee. Your Honors, this is important because when I went back and looked, there are two answers that Samrat filed into the record, neither of which contained a cross-claim or a counter-claim. The counter-claim was filed on the afternoon of January 25, 2016 after Maersk, the plaintiff, had filed a 41A notice of intent to dismiss against my clients. That is important, Your Honors, because once that notice of dismissal is filed, I believe the district court lacked any jurisdiction over the safe water entities at that point in time. Rule 41A1 dismissals are self-effectuating. They require no further court order. And for the record, Samrat's answers were filed on February 11, 2015, no cross-claim. And it was not until January 26, 2015, after the notice of dismissal had been filed, that Samrat appears and files a cross-claim. Your Honors, Rule 41A1 is a voluntary dismissal by the plaintiff without a court order. And it states, a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment is self-effectuating. Now, there is an issue as to what happens when there are multiple parties. Is it still self-effectuating? This Court, along with the majority of other circuit courts in the United States, has held that a plaintiff has absolute right to dismiss any of the defendants to the suit so long as the conditions, not having filed an answer or not having filed a motion for summary judgment, apply to that defendant. There are two decisions by this. But I thought, A, your client was certainly duly served in the original case, and B, I thought there was really no disagreement that your client was well aware of the pendency of the counterclaim for this entire period. Your Honor, I don't know if the record reflects when the notice of the counterclaim was actually perfected. There was an improper service attempt at one point in time, which the court, the district court, subsequently recognized after the entry of the default judgment that we're here over, which I think is a sort of procedural mess. And more importantly, though, my client had settled with the plaintiff as of January of 2016. I understand that, but your client was the shipper. So it was your client who had packed this hydrochloric acid into the tanks that subsequently leaked. And so the idea that your client was going to be totally off the hook was naive, I would say, under the circumstances. They were not. Without a release from Samrat. I would say, Judge, that the, Judge Jones, that there was no expectation that they'd be out of the case. They settled the case, and the district court's... They settled with the plaintiff. They did settle the case with the plaintiff. And they knew the litigation was ongoing against the other party. But under maritime law, Judge, the shipper has its own independent liability. And the district court found that there were two shippers. The district court never passed on whether my client was a shipper. My client settled and was entitled to a dismissal. The district court later found, in a summary judgment, that Samrat was also the shipper. That is Samrat's independent liability under law. I thought they were the consignee. They found them to be the consignee under the Bill of Lading, creating liabilities under that document. Well, that's fine, but that doesn't mean you can't have a cross-claim, does it? Actually, Your Honor, with all due respect, I don't believe that you can have a cross-claim. So are you arguing that you'd have had a meritorious defense? Absolutely, Judge. And I was going to get to that later. We'd absolutely have a meritorious defense, because while I'm on the topic, the cross-claim, it does not assert a right to contractual defense or indemnity. That is important, because that's an independent right. That right does exist. All it does is assert this vague tort indemnity, tort contribution concept, which this Court, on repeated occasions, says does not exist, especially in the context of when a co-defendant is settled. Why is that? Because of the Veroff Share Rule, Amclyde, and this Court's long jurisprudence on that topic, Judge. Back to the two cases that I wanted to cite to the Court's attention. And, Judge Jones, per your citation this morning, I'm happy to do a 28-day letter on this. Plains Growers Inc. v. Ickes Braun, 474 Fed 2nd, 250. And then, Judge Jones, I believe you were on this one 2019 decision. When Record Document 48 is filed into the Record, it is self-effectuating. The District Court has no more jurisdiction. Everything that happens after that, with respect to the party that is dismissed, is moot. It's void, ab initio, whether this Court wants to find relief under Rule 60 or simply render. That is a jurisdictional threshold question, because the cross-claim was filed after the Rule 41A1 notice, which is self-effectuating, a right of the plaintiffs to unconditional dismissal with notice. The District Court had no authority to strike that from the Record. It had no authority to require a motion. It had no authority to require an order. It is self-effectuating notice. You know, this is all real interesting, and I thought, am I going crazy? Have I read this I think you stated in your brief, and I say, no, I haven't heard this argument before. That is correct, Your Honor. Did you waive it? I do not believe we waived it. I believe this Court has discretion to hear it for four reasons, Judge, and I anticipated that question. I'll bet you did. It is jurisdictional. It is jurisdictional, which is a fundamental right. It is purely legal. There are no facts that the District Court needs to develop to This is a rather complicated record, a convoluted record. I believe there was an 86-page opinion District Court record, and trial counsel was focused on the good cause, which I think also exists and provides an alternative basis. And I think, Judge, another important point, the District Court was never going to remedy that defect. The District Court struck that document for the Record, so there was no ability of my client at the District Court level to have that remedy and argue that point. The District Court struck the Yes, Judge Owen. The District Court, on motion of the defendant, filed after the Rule 41 A-1 notice, struck the document retroactively. So it is in the Record, it is in the docket record, but it is not in the appeal record as a document, because it has been struck. What basis was it struck? Because the argument that was presented was that there had to be a court order, and I think that's a legally erroneous conclusion that You mean under Rule 41, whether there had to be a court order? Yes, Your Honor, but Rule 41 A-1A is clear without a court order, Judge. I believe that was the basis that the District Court came back and didn't realize that the cross-claim happens after that self-effectuating order. So, Judge, I think on those four bases, I do think this Court has discretion. Another point is I think the strength of the next two arguments will show that the judgment, the default judgment, is void ab initio. This is a way that this Court doesn't have to hear this case again, because if it does go back somehow Well, they could have filed a third-party complaint. They could have filed a third-party complaint. And that served a need. They could have done that. They did not do that, Judge Owen, but they could have, and that's what would have been required under the rules at that time, under the Federal Rules of Procedure. Now, Judge, the second issue is the District Court failed to hold a hearing on the motion for a default judgment. As this Court has held in, I believe, the New York Life Insurance v. Brown case, there's a two-step process to default judgments. There's an entry of default, which is a perfunctory mechanism that the clerk performs. But following that, the party must move for entry of default judgment. Rule 55 is very particular and detailed as to how that happens. If you have a some certain or a some that can be made certain by computation, you submit an affidavit to the clerk, and the clerk issues a default judgment. Rule 55 very clearly states in all other cases, the party must apply to the Court for a default judgment. Your Honors, that process can only happen after a hearing which was not conducted in this case. Such a hearing would include, among other things, having the party seeking the default judgment at least establish a prima facie case. For instance, Judge Owen, I could sue you for an auto accident that you were not involved in. I've known the rules. Yeah. I mean, I think you have to have a hearing. And at that hearing, SAMRAT would have been required to establish the legal basis of its claim, which it cannot do because there is no legal basis for its claim. And the District Court, frankly, found that later in its ruling on these motions. The District Court concluded that SAMRAT does not have a tort contribution or tort indemnity right. The failure to hold the hearing renders the default judgment void. And under those circumstances, the District Court has no discretion as to the Rule 55c or Rule 60b motion. My opponent makes much of this abuse of discretion standard. This Court has very clearly said in both the New York Life Insurance Company v. Brown, 84 Fed 3rd 137, and the Recreational Property, Inc. v. Southwest Mortgage Service Corp. case, 804 Fed 2nd 311, that if the default judgment was not obtained according to the rule, it is void ab initio and a Rule 60b-4, the relief in Rule 60b-4 is absolute. There is no discretion granted to the District Court. So on that basis, Your Honors, I believe this Court should enter an order voiding the default judgment. You didn't argue the 7-day notice in the trial court until the motion to reconsider, which the Court was not obliged to take up. And Your Honor, I was not trial counsel, and I will admit that this is a tortured record. There were a lot of moving parts to this. No, there were a lot of things that Judge Waters didn't do. And Your Honor, I cannot contest that, but I do think at the end of the day, we all endeavor to get it right. And I think the notice of appearance that was filed by Safewater's counsel absolutely entitles him and Safewater to due process at that point. This Court has recognized that that's a relatively low threshold. In the New York Life Insurance v. Brown case, I believe they even found that speaking with opposing counsel was an unwise move. I think that 55 v. 2 is very clear that both there has to be a hearing, and if the Court is aware of a party making an appearance, that that hearing can only happen 7 days after the notice of appearance. And I think that's clear from the text of the statute, Your Honor, and I don't want to belabor that point. Judge Jones already talked about the lack of legal basis for Samrat's cross-claim. The citation in the record for where the district court agreed with me and agreed with you, I believe, Judge Jones, is ROA 389. I'm sorry, Judge, it's in Record Document 86. Let me get to that. ROA 389 is when the district court did ultimately grant the dismissal of Mayor's claims against my client, even though it should have been done before. At that point, the legal basis for a tort indemnity and contribution claim under maritime law is destroyed. There is no basis for that, Your Honors. And I believe, Judge Jones, I didn't get to talk about it, and I know my time is wrapping up. I think the three bases for good cause exist here. The willful intent needs to be understood in the context of the whole case. My client thought that they were dismissed. There is a meritorious defense, and there is no prejudice. The only prejudice to Samrat is that they would actually have to prove up and make new law as to tort contribution. Does Samrat have any assets in the United States? That I do not know, Your Honor. Thank you, Your Honors. You've reserved your rebuttal time. Thank you, Judge. Thank you, Your Honor. Before the court are two issues. The answer to both questions before the court are no, and the court should affirm. The first question is, did the district court abuse its discretion and commit clear error in granting the default judgment on the grounds of willful neglect? And the second question is, did the district court properly deny the appellant's motion for reconsideration? I would address a point raised by Judge Jones at the outset just a minute ago regarding Samrat's cross-claim that was brought up, whether there was anything that involved Samrat's cross-claim for, excuse me, for a contractual indemnity claim. Paragraph 8 of Samrat's cross-claim, Record Document 375, if Samrat is somehow liable to maersk for all or part of the claim sounding in contra, there's a typo missing, the CT, safe order and or multicam are liable to Samrat for all or part of that claim. So there was a basis in the cross-claim asserted by Samrat. I would point out also at the beginning. You're saying that pleads a contractual basis? There was, yes, Your Honor. Samrat was pleading that. Okay. There's nothing in the record on that basis because we never got to that point. The judge found, the district court found that, two separate district court judges in this case, both using their discretion, found that the default judgment should be upheld. Admittedly, the case does have something of a long and varied and winding procedural history. Some of the important parts that go to the, what I believe is a waived argument regarding the Rule of Law is that Samrat, or excuse me, maersk, the original plaintiff and the carrier in this case, actually sued safe order entity and obtained Hague service on the safe order entity and obtained a entry of default against the safe order entity in 2013 and 2014. Safe order did not appear ever in response to that. The plaintiff then amended their complaint a couple of times after that, namely to add another safe order entity. After that was done, then there were, a Rule 16 conference, an initial conference was arranged. Plaintiffs sought additional time to be able to conduct discovery because the parties had not been involved. As a result of that, in the joint discovery case management plan, at record 238 and at record 247 and at 255, those entries are where there is ample evidence in section 6 of the joint discovery case management plan where Samrat stated his desire to cross-claim against the safe order entity. Additionally, before the district judge, there was an intent to, excuse me, before the magistrate judge to bring a cross-claim. Now, I was not counsel through the entire proceedings below. I will say that a cross-claim was not brought because after the second amended complaint was filed by Maersk, Maersk immediately ordered a summons and began Hague service on the safe order entities. At that time, Samrat could have perhaps brought a cross-claim, but Samrat would also have to go through Hague service against the same entity. The plaintiff was already attempting to bring that entity into the case. The plaintiff and Samrat had both expressed a desire to bring safe order into the case. And so Samrat was essentially waiting until safe order made an appearance in response to the plaintiff's complaint, and then it could bring its cross-claim immediately against the counsel, servant on the counsel who appeared and would save proceedings. It would save judicial resources. It would save going through Hague service in India. The district court entered a new scheduling order with trial in February 2017 at record doc 255. That same day, the court granted the plaintiff's request for the second amended complaint, and the plaintiff sought the summons. That was essentially in March of 2017. In, excuse me, in March 2015. In November of 2015, the plaintiff filed a second return of service of an affidavit on safe order. That is record 280 through 326. That shows that in November, the plaintiff was, had already affected Hague service on safe order trying to bring them into the claim, into the case. Additionally, the second amended complaint included a separate safe order entity in India, and there was a additional affidavit of service on that safe order India entity who is not before the court here. That's record doc 327 through 373. It was anticipated that after this service of safe order, they would appear to contest the plaintiff's claim. Once they appeared, SAMRAT would file its cross-claim. But safe order and the plaintiff colluded to prevent SAMRAT from being able to do that and prevent safe order from appearing. In fact, Mayor's Council, the Plaintiff's Council, filed the notice that was stricken from the record by the district judge. After that point, safe order never appeared. The Plaintiff Mayor's did all the fighting for over two years on safe order's behalf, fighting SAMRAT, continuously trying to keep safe order out of the lawsuit. How could they do that? They were, they were, they contested every single action by safe order before the district judge. They were the only party before the court, and they were opposing and filing oppositions to everything that SAMRAT was filing, trying to pursue the cross-claim against safe order. Well, how can they do that? They were a party to the proceeding. And safe order did everything, I mean, your client did everything to, to pursue the cross-claim except effectuate Hague's service. Not at that point, Your Honor. This is prior to our effectuating Hague's service on safe order. This is, this is essentially in the record right after SAMRAT filed its cross-claim, which is document 374 of the record. SAMRAT filed certificates of service and tried to serve admittedly improper service by fax, email, FedEx, and U.S. Mail in March, and I should say admittedly improper. The court found that those efforts were improper to qualify as Hague service. As a result of that, even though that had already been filed and SAMRAT sought default judgment in early 2016 against safe order, SAMRAT still went forward and effected Hague service. And in fact, filed in December a certificate of service supporting Hague's service, that's in the record at page 923. The important part of that is it shows that Hague's service was effected on safe order in India on August 11th of 2016. SAMRAT did not file the request for entry of default judgment until December of 2016, four months later. There was a four-month period after SAMRAT served safe order in India, waiting for them to answer, and they did not appear. Ultimately, because the scheduling was getting close, SAMRAT filed a motion for entry of default. That motion was filed on December 8th for a request for default. There was an order essentially granting the entry of default, a preliminary default. It was not issued by the clerk. It was issued by Judge Harman herself, the district judge. Two days later, on December 16th, SAMRAT filed its motion for default judgment. Three days later, on Monday, December 19th, was when safe order's New Jersey counsel filed his motion to appear. SAMRAT had already filed its motion for default judgment. There was no obligation on SAMRAT to serve any pleadings on safe order's counsel at that time, who had not even yet been granted authority to appear. You're saying any duty would have been to subsequent proceedings and not... Yes, Your Honor. And, in fact, that's under Rule 5. That was his Pro Hoc Vici motion. Correct. Mr. Wanchu in New Jersey filed a motion Pro Hoc Vici. Now, I will say, in some of Maersk's filings earlier in In fact, Mr. Sims, SAMRAT's counsel at that time in 2016, emailed Mr. Wanchu a copy of the ECF notice from the court, from the Southern District, saying here is SAMRAT's cross-claim. Mr. Wanchu, New Jersey's counsel for safe order, was aware of SAMRAT's cross-claim as of shortly after the filing in February of 2016. His client was aware in March by fax, email, FedEx, and international mail of the cross-claim, and then they were served via Hague service on August 11th of 2016. SAMRAT did not seek default until December of 2016. With that procedural history, I want to turn for a minute to Rule 55 on default judgment. One of the points raised by my friend is that under 55b2 default judgment by the court is that there has to be a hearing. Rule 55b2 says if, if, conditionally, if the party against whom default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least seven days before the hearing. There was no hearing required in this matter. The court, the next sentence says, the court may permissively conduct hearings or make referrals preserving any federal statutory right to a jury trial when to enter or effectuate judgment it needs to a conduct an accounting, b determine the amount of damages, c establish the truth of any allegation by evidence, or d investigate any other matter. SAMRAT was only seeking contractual indemnity that or toward indemnity at that time that it was owed by safe order if in fact it was found liable to mayors at a later date and any damages. At the time of the filing of the default, there were no damages. Maersk had just filed its summary judgment. So there was no requirement, save SAMRAT's position, for there to be any hearing. In fact, there are in the case Turner v. Saltievera, I believe that case gives a good overview of the step-by-step process employed by a district court when entering a default judgment. What's the status of the litigation with Maersk at this point? Maersk obtained judgment on its motion for summary judgment against SAMRAT. Judge Hainan awarded a final judgment for over $133,000 against SAMRAT only, as the only party left, and awarded approximately $50,000 in attorney's fees. And when last calculated, the judgment including interest, as this case was begun in 2013, was in the area of $250,000 against SAMRAT. Maersk has sought to seize SAMRAT's assets in the United States, and is seeking to liquidate those assets at present. And SAMRAT, as far as I know, has very little funds, if any funds, to pay the judgment at this point. So are you essentially pursuing this appeal on behalf of Maersk? Well, we're pursuing it on behalf of the appeal of SAMRAT to repay Maersk for what it claims it lost in the cleanup expenses. SAMRAT had, as you mentioned earlier, Judge Jones, this is an admiralty equity issue here. SAMRAT— Has SAMRAT assigned its—assigned anything to Maersk? No, ma'am. SAMRAT has a judgment—Maersk was awarded a judgment against SAMRAT, and Maersk is— Is it paying your fees? I guess is the easiest way to ask. No one right now, Your Honor. As a result, there is currently— excuse me, let me return to Turner, explain the case by the way the analysis goes. In Turner, it's important to note the step-by-step process by the district court. This is at page 17 of my report, a default, after which the plaintiff filed a motion for entry of judgment. The district court issued an order granting the motion for default judgment, limited to the issue of liability on July 5th, and then scheduled a hearing on the damages issue for July 15th. That's Turner, 580F, second at page 201. SAMRAT's position in this case is because there were no damages at the time of the default judgment, there was no need for a hearing. Does Safewater have any assets in the U.S.? That I am not aware of, Your Honor. So you're pursuing a $250,000 judgment against another foreign entity that's registered to do business here? There is ancillary litigation going on in the Southern District of New York related to this matter. Judge Owen mentioned earlier the possibility of bringing a third-party complaint, that SAMRAT could have done that. There was a separate action brought by Maersk in the Southern District of Texas. That case was transferred to the Southern District of New York. It involves some of the same claims that are in this lawsuit that were severed out of that in the Southern District of New York. There is currently a collection action, excuse me, not a collection action in the Southern District of New York with respect to other bills of lading and contracts and exposure. You mean not this particular case? Not this particular case, no ma'am. I don't care about that. My goodness. I did want to point out that the main issue here from SAMRAT's perspective is the four months, and in this court's ability not to disturb the great discretion given to the trial judge, both trial judges here, is that there was four months from when safe order was served by Hague Service in August of 2016 before SAMRAT moved for default. That's four months of willful inaction by safe order in trying not to join this litigation. As Judge Jones pointed out, safe order was served back in 2014 with this lawsuit and has been aware of this lawsuit and has never appeared. Even after the grant of default judgment, as happened in a number of cases that are before this court and as GC Farmland that Judge Stewart was on the panel for, parties have filed untimely answers so that the district court is aware at a minimum of what they would be arguing as meritorious defenses. That did not happen in this case. At no time has safe order filed an untimely answer in the district court to say, here are my meritorious defenses, Judge, please consider these with respect to my 55A motion or my 60B4 or 60B6 motion. This case is not like the FederData case where the plaintiff there sought to take a tactical advantage for default. Here, SAMRAT was not trying to take any tactical advantage for a default. SAMRAT filed a motion. SAMRAT sought a default judgment. There was no reason for hearing. The default judgment was granted. Is it correct that SAMRAT was the consignee? Yes, ma'am. So it was supposed to take delivery of this product? It was designated as the consignee on the bill of lading. That's how I would answer your question. What does that mean? That means that Maersk and the shipper, Safewater, on issuance of the bill of lading in India, designated SAMRAT as the consignee. Yeah, but I mean, so they were going to send it to somebody else, right? They needed to send the original bill of lading to the consignee, to SAMRAT. I do not know, and the record is not clear, whether SAMRAT ever received those original other counsel, that there was no authority for this particular non-hazardous cargo shipment that SAMRAT be named as consignee. But I do not know that there's any record evidence. That was in the answer as a general denial. Okay, this is a mess, but I'm just saying as a practical matter, normally the consignee is the person who takes delivery of the goods. Normally, Your Honor, you're correct. And in this case, in fact, that is the basis for which the district judge found SAMRAT liable to Maersk on contract, not on tort. So there's no arguing Amclyde here, tort contribution, because the district judge in granting Maersk's summary judgment found that it was a result of the bill of lading contract, SAMRAT being consignee, and the definition of merchant on the reverse terms. I see that my time is just about up, if there are no further questions. All right. Thank you very much. Thank you. Leaning on the edge of your chair, Mr. Bell. Waiting to get back up here. I have a tough time. I'm too eager sometimes. Something Mr. O'Neill just said strikes me as interesting. He said, there is no basis for tort or contribution. And Judge Jones, this goes to an issue you raised. Mr. O'Neill cited— I didn't know I was so smart. Mr. O'Neill cited his cross-claim, saying there was a contractual claim for defense indemnity. If that were the case, it was not presented in the application for entry of default judgment, Your Honors. That document— Well, it's a little late to argue about that, isn't it? Your Honor, with all due respect, I do not believe so, because as the moving party, Samrat bears the burden to establish its legal right to that remedy to the satisfaction of the district court. That is why Rule 55B exists, and we would not be here today if the district court had required Samrat to explain the legal basis. I mean, the problem that you have, though, is that your brief doesn't say that. I believe, Judge, that we do, because it intertwines with the meritorious defense argument. The lack of—the lack of a legal basis for the Rule 55B hearing that should have happened, Judge—Judge Panel, is the essence of the meritorious defense. Record ROA 949 is the application for entry to default, and I would submit to Your Honors there's not a single mention of a contractual right to defense and indemnity. We're not saying they shouldn't have hired you to begin with, but the two issues you have are the district court erred in not vacating the default judgment for failing to provide seven-day notice, and the court erred in denying the motion for reconsideration, and then in the alternative, remanded for the district court to provide reasons. I think, Judge, liberally construed, the Rule 55C motion, good cause, good cause, should be construed broadly, and good cause includes the meritorious defense, which I believe absolutely subsumes that as a matter of due process rights, that the district court conducts the Rule 55C—excuse me, the Rule 55B hearing in accordance with the Federal Rules of Procedure. In this case, in this scenario where all this time had elapsed, et cetera, et cetera, that on these facts, the district court was mandated under the Rule to have the hearing that you so vigorously urged to us now. Chief Judge Hughes, I believe it's the New York Life Insurance v. Brown case, and I will admit that the jurisprudence, there is not a wide development body of law in default judgments. There's just not a lot of published cases on it. There's not a wide body, but I think if you look at the text of 55B— That's a good reason for that. You're right, because most of these never see the light of day, Judge. Exactly. But if you read the text of 55B, if the court knows that a party appears and has to give notice before a hearing, that absolutely presumes that a hearing is required, because otherwise—and in fact, Chief Judge Sheward, I've actually had one. I had to take a default judgment in Baton Rouge before then-Chief Judge Brian Jackson, and he had a hearing. He scheduled a hearing. There was no opposing counsel, but I had to go to court and establish a prima facie case and my damages. And this goes to another important point. The right that SAMRAT seeks to impose is an inchoate right. It doesn't exist. It never existed at the time the default judgment was entered. It can only happen in the future. And Judge Jones, I do owe you something, because I told you I had the summary judgment ruling by the court in my notes. The court's ruling on Marist's motion for summary judgment recognized that the legal deficiencies of the default judgment—that's Record Document 87—at ROA 1162, the court recognizes—this is after entry of default—the court recognizes that SAMRAT has no contribution or tort indemnity claim. That was the only basis for the cross-claim. That was the only basis presented in the application. In that ruling, Judge Jones, the court also granted a pro tanto reduction of SAMRAT's liability based on safe order settlement. SAMRAT has its own independent liability that it cannot pass off another party, regardless of whether it has a default judgment that I think, Your Honors, is void ab initio. There's a strong public policy expressed by this Court that default judgments are disfavored. Three days after the entry of default, my client's counsel appeared. That entitles him to notice, Judge Stewart, you asked this question, subsequent proceedings. The subsequent— He's entitled to notice going all the way back to the— He's not entitled to notice going all the way back, and he does at that point have a due diligence requirement to look at the PACER record, but he is also entitled to rely on the text of Rule 55B, which says that there is going to be a hearing, and such hearing is not going to happen at least seven days into the future, at least seven days into the future. For a judge that has had this languished forever with little activity, et cetera, et cetera, why is the judge going to just trigger himself to do something when the parties may have made a decision to do what they did? So now how does the rule become one that causes the judge to have, in a default judgment scenario, to do something that the party hasn't energized themselves to do? Well, Your Honor, that's a great question. Well, that's why I asked it. And I think that because the rules exist, when that notice of appearance gets filed, the district court is aware that counsel has now been involved. And I think that triggers a higher degree. I realize everything going forward or backwards would create a presumption. Was that or was that not three days after the default was entered? It was three days after the entry of default, but before the judgment of default, which is very important because of the two-step process. But he said it's after the judgment. It was not. Well, I'm not sure it makes a difference anyway. And, Judge, for the record, the entry of default, ROA 945, happens on December 14th. The memorandum supporting the default judgment, the application for the default, happens on December 16th, ROA 949, which happens to be a Friday afternoon, talking about trying to take advantage of the rules. The notice of appearance happens on Monday, the 19th, and the court grants a default judgment on the 21st. I would also note, Judge Jones, that curiously, a year after, almost a year, eight months after the ruling on the default or the entry of the default judgment, the court vacates and sets aside the prior entry of default that went back because of the improper service. So— All right, Mr. Spillett, I kept waiting on you to get a period at the end of that. There's my period, Judge. Putting commas in the screen so you could keep going. There's my period. We conclude that you got into this case very late. Perhaps you got into the case earlier. Just saying. But at any rate, before we take the last case up, the panel will take just a real brief recess, about ten minutes, and then we'll come back up to hear the Easton Concrete case. We'll stand in recess for about ten minutes.